

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **BRADLEY R. CHITTAM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 5:24-cv-766-CLS** |
| | ) | |
| **UNITED LAUNCH ALLIANCE LLC,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff, Bradley R. Chittam, asserts ten claims against defendant, United
Launch Alliance, L.L.C.: *i.e.*, claims for discrimination (failure to accommodate) and
retaliation under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et
seq.* (Counts I and II); a claim for discrimination under the Rehabilitation Act of
1973, 29 U.S.C. § 794 *et seq*. (Count III); claims for violation of plaintiff's First and
Fourteenth Amendment rights under 42 U.S.C. § 1983 (Counts IV, VI, VII, and VIII);
a claim for discrimination under the Religious Freedom Restoration Act of 1993, 42
U.S.C. § 2000bb *et seq.* (Count V); and, claims for negligence and invasion of
privacy under Alabama law (Counts IX and X). Doc. no. 1. Following consideration
of the pleadings, ULA's motion to dismiss (doc. no. 4), and the briefs of counsel
(together with referenced exhibits), the court enters the following memorandum of

opinion.[1]

## I. PLAINTIFF'S ALLEGATIONS

Despite the length of plaintiff's complaint — it contains 260 paragraphs spread across 52 pages — the pleading is no model of clarity. It contains many statements that bear no obvious relevance to plaintiff's claims. Nonetheless, the following is a distillation of the essential facts.

United Launch Alliance ("ULA") is "a joint venture of Lockheed Martin Corporation and The Boeing Company, formed in 2006 to construct and launch rockets for a variety of government and commercial customers . . . [including] NASA, the United States Space Force, and the National Reconnaissance Office."[2] Plaintiff was employed as an aerospace technician at the company's Decatur, Alabama, manufacturing facility from 2008 until his employment was terminated in December 2021.[3]

---

[1] The parties were offered the opportunity for oral argument, but chose to submit defendant's motion to dismiss for decision on the basis of the pleadings, briefs, and exhibits.

[2] Doc. no. 1-6 (ULA response to EEOC charge), at ECF 1. "ECF" is an acronym formed from the initial letters of the name of a filing system that allows parties to file and serve documents electronically: *i.e.*, "Electronic Case Filing." *The Bluebook: A Uniform System of Citation*, Rule 7.1.4, at 21 (Columbia Law Review Ass'n *et al*. eds., 19th ed. 2010). When this court cites to pagination generated by the header electronically imprinted on a scanned copy of a document filed in this case, it will, as here, precede the page number(s) with the letters "ECF."

[3] Doc. no. 1 (Complaint), ¶ 13. Plaintiff's complaint states that he was terminated on December 20, 2021. However, his second EEOC charge and ULA's response to the charge state that he was terminated on December 22, 2021. *See* doc. no. 1-3, at ECF 2; doc. no. 1-6, at ECF 4.

The facts relevant to plaintiff's claims began on September 1, 2021:  the effective date of the COVID-19 vaccination requirement imposed by ULA upon all of its employees.[4]  Persons who did not desire to be vaccinated were afforded the opportunity to request an exemption from the requirement based upon a qualifying medical condition or religious objection.[5]

On September 9, 2021, shortly after ULA's implementation of its vaccination mandate, President Joseph R. Biden, Jr., signed Executive Order 14042, which required parties that contract with the federal government, such as ULA, "to provide adequate COVID-19 safeguards to their workers performing on or in connection with a Federal Government contract."[6]  The Executive Order required contractors to include a clause in existing and new contracts guaranteeing, for the duration of the contract, compliance with all guidance for contractor or subcontractor workplace locations to be published by the "Safer Federal Workforce Task Force."[7]  Guidance issued by that Task Force on September 24, 2021, required employees of "covered contractors" to be vaccinated no later than December 8, 2021.  (Updated guidance issued on November 10, 2021, extended the deadline to January 18, 2022.)  *See*

---

[4] Doc. no. 1 (Complaint), ¶ 52; doc. no. 1-6 (ULA response to EEOC charge), at ECF 1.

[5] Doc. no. 1-6 (ULA response to EEOC charge), at ECF 2.

[6] Doc. no. 1-5 (Executive Order on Ensuring Adequate COVID Safety Protocols for Federal Contractors), at ECF 1.

[7] *Id.*

*Georgia v. Biden*, 574 F. Supp. 3d 1337, 1344 n.3 (S.D. Ga. 2021), *vacated in part by Georgia v. President of the United States*, 46 F.4th 1283 (11th Cir. 2022).

After seven states (one of which was Alabama)[8] and various state officials and agencies joined in a suit to enjoin enforcement of Executive Order 14042, the U.S. District Court for the Southern District of Georgia entered, on December 7, 2021, a nationwide injunction barring enforcement of the Order.  574 F. Supp. 3d at 1357. The Eleventh Circuit affirmed the district court's injunction, but limited its enforcement to the seven plaintiff states, their respective agencies, and members of a trade organization.  46 F.4th at 1308.

The plaintiff in the present action, Bradley R. Chittam, submitted a request for a medical "accommodation" — *i.e.*, an exemption from ULA's vaccination requirement — on September 22, 2021.  He based his request upon the assertion that he suffered from tinnitus, commonly referred to as "a ringing in the ears."[9]  Plaintiff's request form was completed by a family practice physician, who stated "Tinnitus is a known possible complication.  Given severity of tinnitus already worried about his

---

[8] Georgia was the lead-plaintiff; the other states joining in the suit to enjoin enforcement of Executive Order 14042 included Alabama, Idaho, Kansas, South Carolina, Utah, and West Virginia. *Georgia v. Biden*, 574 F. Supp. 3d 1337, 1342 (S.D. Ga. 2021), *vacated in part by Georgia v. President of the United States*, 46 F.4th 1283 (11th Cir. 2022).

[9] Doc. no. 1 (Complaint), ¶ 66; Doc. no. 1-6 (ULA response to EEOC charge)*, at ECF 3.

chronic condition, which already requires accommodation, being made worse."[10]

Plaintiff's request for a medical exemption was denied on October 22, 2021. He asked for an explanation of the denial three days later,[11] and was told by ULA's Medical Leader that his request had been denied because, according to guidelines issued by the Centers for Disease Control and Prevention, "tinnitus is not contraindicated for the vaccine."[12]

Even so, plaintiff refused to be vaccinated; and, according to his first EEOC charge, he was placed on "unpaid leave" on November 1, 2021.

ULA's January 28, 2022 response to plaintiff's EEOC charge states that, after plaintiff's request for a medical exemption was denied, the International Association of Machinists and Aerospace Workers (AFL-CIO) filed a grievance on his behalf. That grievance also was denied, and plaintiff was allowed until December 18, 2021 to be vaccinated. He again refused, however, and his employment was terminated on December 20 or 22, 2021.[13]

Plaintiff's complaint alleges that he *intended* to request an exemption from

---

[10] Doc. no. 1-6 (ULA response to EEOC charge), at ECF 3. Complaint paragraph 66 states that plaintiff timely submitted his medical accommodation request, and references Exhibit 5 to his Complaint. That exhibit, however, is a copy of Executive Order 14042. *See* doc. no. 1-5. The sole mention of "tinnitus" is found in paragraph 89, where plaintiff alleges that he previously had received an unspecified accommodation for that condition.

[11] Doc. no. 1 (Complaint), ¶ 93.

[12] Doc. no. 1-6 (ULA response to EEOC charge), at ECF 4.

[13] *Id.* See note 3, *supra*, discussing plaintiff's termination dates.

ULA's vaccination requirement based upon a religious objection — *i.e.*, his professed status as a "devout Southern Baptist Christian" — but ULA's Human Resources Department and Managers led him to believe that he could file an exemption based upon *either* a medical condition *or* upon a religious objection, but not both.[14]

Plaintiff filed the first of two EEOC charges on December 6, 2021, before his employment was terminated. He checked only the box indicating that he was complaining about disability discrimination, and stated:

> I am a qualified person with a disability. I was hired by the above-named employer in 2008 in the position of Aerospace Technician.
>
> On or about August 18, 2021, I was notified by my employer that it would be requiring all employees to have their first vaccination by October 29, 2021. I am an individual with an impairment which substantially limits one or more major life activities. My doctor has recommended that I not take a COVID-19 vaccination as a requirement of my job.
>
> On or about September 23, 2021, I notified my employer of my need for an accommodation from the vaccination requirement, but instead of accommodating my disability, on November 1, 2021, my employer placed me on unpaid leave. I am currently on said leave status.
>
> I believe my employer failed to accommodate me because of my disability, in violation of Title I of the Americans with Disabilities Act, as amended.

Doc. no. 1-1 (First EEOC Charge).

---

[14] Doc. no. 1 (Complaint), ¶ 82 (alterations supplied).

Plaintiff filed a second EEOC charge of discrimination on January 26, 2022, indicating that the alleged discrimination was based upon "Disability; Retaliation."[15] He restated his initial charge, but added:

> On December 5 [*sic*], 2021, I filed a Charge of Discrimination (420-2022-00405). I was discharged on December 22, 2021. I believe I have been discriminated against because of my disability, in violation of the Americans with Disabilities Act of 1990, as amended. I also believe I have been retaliated against because of my participation in a protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

Doc. no. 1-3 (Second EEOC charge), at ECF 2. The EEOC issued plaintiff a Notice of his Right to Sue for each charge on March 13, 2024.[16]

## II.  STANDARD OF REVIEW

The Federal Rules of Civil Procedure permit a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). That statement must be read together with Rule 8(a), which requires that a pleading contain only a "*short and plain statement* of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-

---

[15] Doc. no. 1-3 (Second EEOC charge), at ECF 1.

[16] Doc. nos. 1-2, 1-4.

defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (citations omitted). As the Supreme Court stated in *Iqbal*:

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [*Twombly*, 550 U.S. at 555]. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

> To survive a motion to dismiss [founded upon Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557 (brackets omitted).

> Two working principles underlie our decision in *Twombly*. *First*, the tenet that a court must accept as true all of the allegations contained in a compliant is *inapplicable to legal conclusions*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Second*, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a

context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 409 F.3d at 157–58. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While *legal conclusions* can provide the framework of a complaint, they must be supported by factual allegations. *When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief.*

*Iqbal*, 556 U.S. at 678-79 (emphasis supplied, second and fourth alterations in original, other alteration supplied). Based upon *Iqbal*, the Eleventh Circuit has instructed courts to use a two-step framework to test the sufficiency of pleadings:

First, we identify the allegations that are "no more than conclusions." Conclusory allegations are not entitled to the assumption of truth. Second, after disregarding conclusory allegations, we assume any remaining factual allegations are true and determine whether those factual allegations "plausibly give rise to an entitlement to relief."

*McCullough v. Finley*, 807 F.3d 1324, 1333 (11th Cir. 2018).

## III.  PLAINTIFF'S CLAIMS

### A.    Disability Claims

**1.    "Count I — Violation of the ADA, 42 U.S.C. § 12101e *et seq*. Disability Discrimination — Theory of Failure to Accommodate"**

A plaintiff must allege three things in order to state a *prima facie* case of

9

disability discrimination: (1) he has a "disability" within the meaning of the Americans with Disabilities Act; (2) despite his disability, he is "a qualified individual" — meaning that, with or without reasonable accommodation, he could perform the essential functions of the employment position that he either held or desired;[17] and (3) he suffered an adverse employment action because of his disability. *See, e.g., Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1179 (11th Cir. 2019). The ADA defines the term "disability" in a manner that includes: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [or] (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2) (alteration supplied).

Although styled as a claim for disability discrimination, plaintiff makes statements pertaining *only* to his (nonexistent) request for an exemption to ULA's vaccination requirement based upon a religious objection. For example, he states:

> 171. The ADA prohibits Defendant from discriminating against its employees on the basis of their sincerely held beliefs.

> 172. The named Plaintiff holds sincere religious beliefs that preclude him from receiving the mRNA COVID-19 vaccine.

---

[17] 42 U.S.C. § 12111(8); *see also* 29 C.F.R. § 1630.2(m) ("Qualified individual with a disability means an individual with a disability who satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of such position").

* * * *

177.   Irrespective of the interactive process, Defendant failed to grant the named Plaintiff's valid religious exemption request and provide reasonable accommodations, thereby discriminating against the named Plaintiffs [*sic*] because of their [*sic*] religious beliefs.

178.   Through Defendant's actions, policies, employment practices, and conduct directed at Plaintiff's religious faith in addition to failing to engage in the interactive process or offer any accommodations, Defendant intentionally and/or recklessly deprived the named Plaintiff of his constitutional rights to protection in violation of Title VII.

Doc. no. 1 (Complaint), at 37-38.  The foregoing allegations do not support a claim of discrimination under the Americans with Disabilities Act.

Even reading the complaint as a whole, plaintiff has not stated an ADA claim for disability discrimination.  Plaintiff failed to allege that:  tinnitus substantially limited one or more of his major life activities; or, if so, that an exemption from the COVID vaccination requirement was a reasonable accommodation.   Plaintiff contends that ULA's prior, *unspecified* accommodation for that condition is dispositive of his contention that he is disabled under the ADA.  However, an employer who has, in the past, voluntarily provided an accommodation that may have exceeded the legal requirements of the ADA is not obligated to continue to provide an accommodation. *See D'Onofrio v. Costco Wholesale Corporation*, 964 F.3d 1014, 1022 (11th Cir. 2020).  Accordingly, this claim is due to be dismissed.

To the extent that Count I of plaintiff's complaint may have been intended to assert a claim for religious discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, he did not exhaust the prerequisite administrative remedies for such a claim. *See generally* 42 U.S.C. § 2000e-5; *see also Alexander v. Fulton County*, 207 F.3d 1303, 1332 (11th Cir. 2000) ("No action alleging a violation of Title VII may be brought unless the alleged discrimination has been made the subject of a timely-filed EEOC charge.").

## 2.    "**Count II — Violation of the ADA, 42 U.S.C. § 12203** *et seq.* **Disability Retaliation**"

To establish a *prima facie* case of retaliation under the ADA, a plaintiff must show that:  (1) he engaged or participated in a statutorily protected expression or activity; (2) he subsequently suffered an adverse employment action; and (3) there is a causal linkage between the protected expression or activity and the adverse action. *See, e.g., Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1260-61 (11th Cir. 2001) (citing *Farley v. Nationwide Mutual Ins. Co.*, 197 F.3d 1322, 1336 (11th Cir. 1999)); *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997) (citing *Goldsmith v. City of Atmore*, 96 F.2d 1155, 1163 (11th Cir. 1993) (explaining *prima facie* elements of Title VII retaliation claim)).

Plaintiff alleges that he was retaliated against for requesting an exemption to

ULA's vaccination requirement based upon a disabling medical condition (tinnitus).[18]

As ULA observes, even if requesting an exemption qualifies as "protected activity," plaintiff was not terminated in retaliation for that act; rather, he was terminated for refusing to be vaccinated in accordance with ULA's company-wide vaccination mandate *after* his request for an exemption based upon a medical condition was twice denied.  Accordingly, this claim is due to be dismissed.

### 3.  "Count III — Violation of Section 504 Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.* Disability Discrimination"[19]

ULA argues that this claim is time-barred.  Claims based upon Section 504 of the Rehabilitation Act must be brought within the applicable state statute of limitations:  a period which, in Alabama, is two years.  *See, e.g., Horsley v. University of Alabama*, 564 F. App'x 1006, 1008 (11th Cir. 2014).  It is not necessary to address that argument, however, because plaintiff's Rehabilitation Act claim is due to be dismissed for different reasons.

Section 504 of the Rehabilitation Act prohibits *recipients of federal financial assistance* from discriminating against qualified individuals with disabilities in employment and in their programs and activities.  29 U.S.C. § 794.  "Federal

---

[18] Plaintiff does not allege that he was retaliated against for filing an EEOC charge.  Even if he had, he still cannot show a causal link.

[19] This count of the complaint inexplicably refers, repeatedly, to "named Plaintiffs" (plural).

assistance" is not defined in the Act itself, but courts have defined the term to mean the federal government's provision of *a subsidy* to an entity, as opposed to *monetary compensation* for work performed in accordance with a government contract. *Shotz v. American Airlines, Inc.*, 420 F.3d 1332, 1335 (11th Cir. 2005) (citing cases). Thus, Section 504 does not apply to plaintiff's claim.

Even so, Section **503** of the Rehabilitation Act provides that employers with federal contracts exceeding $10,000, such as ULA, are barred from discriminating against otherwise qualified individuals with a disability.   29 U.S.C. § 793. Nevertheless, there is no private right of action to redress alleged discrimination under Section 503 of the Rehabilitation Act. *See Rogers v. Frito-Lay, Inc.*, 611 F.2d 1174, 1084-85 (5th Cir. 1980).[20]  Instead, in order to enforce Section 503 rights, a qualified individual with a disability must first exhaust administrative remedies by filing a complaint with the Department of Labor's Office of Federal Contract Compliance Programs. *See* 29 U.S.C. § 793(b); 41 C.F.R. § 60-741.61.  Plaintiff did not do so.  Thus, he has no actionable claim under either Section 503 or Section 504 of the Rehabilitation Act.

## B.   Constitutional Claims

---

[20] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

**"Count IV — Violation of First Amendment of U.S. Constitution, U.S. Const. Amend I Free Exercise of Religion Clause — Duty Disqualification"** [*It is not clear what plaintiff intends by use of the term* "duty disqualification."]

**"Count VI — Deprivation of Civil Rights & Liberties Under §1983 14th Amendment Substantive Due Process — Fundamental Right to Privacy: Refusal of Medical Procedures"**

**"Count VII — Deprivation of Civil Rights & Liberties Under § 1983 14th Amendment Substantive Due Process — Fundamental Right to Privacy: Avoid Disclosure of Personal Medical Information"**

**"Count VIII — Deprivation of Civil Rights & Liberties Under § 1983 14th Amendment Due Process Clause — Freedom of Religion"**

Plaintiff's constitutional claims are asserted pursuant to 42 U.S.C. § 1983, which provides, in pertinent part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress . . . .

Laying aside plaintiff's incoherent pleading of the four counts referenced above,[21] his

---

[21] For example, plaintiff states in paragraph 204 of Count IV that he "engaged in protected activity when he requested and submitted his religious exemption request from Defendant's COVID-19 Policies," even though elsewhere in the complaint he states that he was prevented from requesting a religious exemption due to ULA management's "misrepresentations." *See, e.g.*, Doc. no. 1 (Complaint), ¶¶ 61, 65, 73, 75, 76, 80, 81, 82, 83. Indeed, in paragraph 83 of the Complaint, plaintiff states that

> Plaintiff would have filed a religious exemption because he is a devout Southern Baptist Christian and believed his religious exemption request, which would have

constitutional claims are due to be dismissed for several reasons.

First, ULA is a private corporation, and cannot be sued under § 1983 for constitutional violations. *See, e.g., Shelley v. Kraemer*, 334 U.S. 1, 13 (1948) (holding that the Fourteenth Amendment "does not erect a shield against merely private conduct, however discriminatory or wrong").

In recognition of that fact, plaintiff argues that ULA's status as a federal contractor makes it a government actor. Specifically, plaintiff alleges that: ULA was required to follow Executive Order 14042, "if the executive order ever went into effect";[22] ULA's COVID policies were established at the direction of the federal government;[23] ULA's COVID policies were "significantly intertwined with the Government's own COVID-19 policies . . . [and] efforts to prevent the spread of the virus";[24] and. ULA's "announcement, creation, implementation, and enforcement of [its own] COVID-19 Vaccination Mandate is exactly analogous to the Government's own COVID-19 vaccination mandate in every possible manner."[25]

---

been timely completed and submitted in good faith with accurate descriptions of his sincerely held religious beliefs would be respected by Defendant; *however, Plaintiff was never allowed to file such due to Defendant's intentionally misrepresentative statements to Plaintiff regarding exemption status.*

Doc. no. 1 (Complaint), ¶ 83 (emphasis supplied).

[22] *Id.* ¶ 41.

[23] *Id.* ¶ 42.

[24] *Id.* ¶ 46 (underlining in original, ellipsis and alteration supplied).

[25] *Id.* ¶ 48 (underlining in original, alteration supplied).

16

However, plaintiff has not alleged that ULA "acted under color of *state law*," as § 1983 requires.  Instead, plaintiff alleges, in essence, that ULA acted under color of *federal law*, which is not actionable under § 1983.

Simply put, § 1983 "has no application to the actions of the *federal government* or its officers acting under color of *federal law*, but is instead confined to deprivations under color of *state law*."  *Nicholson v. Johanns*, 511 F. Supp. 2d 1193 (S.D. Ala. 2007) (emphasis supplied) (citing *Mack v. Alexander*, 575 F.2d 488, 489 (5th Cir. 1978); *Rodriguez v. Ritchey*, 556 F.2d 1185, 1189 n.13 (5th Cir. 1977); *Nghiem v. U.S. Department of Veterans Affairs*, 451 F. Supp. 2d 599, 605 (S.D.N.Y. 2006)).

ULA spends a great deal of space arguing that it is not a *state actor*, rather than arguing that, when imposing the company-wide vaccination requirement, it did not act under color of *state law*.  If ULA acted as a government official of any kind, it would have been as a federal official — *if* it was acting in conformity with Executive Order 14042.  Notably, however, ULA imposed a vaccination requirement *before* issuance of — and independently of — Executive Order 14042.

Finally, even if plaintiff's § 1983 claims were somehow actionable, his claims are barred by the statute of limitations.  The Supreme Court held in *Owens v. Okure*, 488 U.S. 235 (1989), that, in suits founded upon 42 U.S.C. § 1983, federal courts

17

must "borrow" the "general," or "residual," statute of limitations governing personal injury actions under the law of the forum state. *Id*. at 249-50 ("We accordingly hold that where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions."). The general, or residual, statute of limitations in Alabama is two years. *See* Ala. Code § 6-2-38(*l*) (1975);[26] *see also Lufkin v. McCallum*, 956 F.2d 1104, 1108 (11th Cir. 1992) (applying *Owens* rule retroactively, and holding that plaintiff's § 1983 claims were barred by Alabama's two-year statute of limitations); *Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1484 (11th Cir. 1989) (*en banc*); *Foster v. Board of School Commissioners of Mobile County*, 872 F.2d 1563, 1567 n.4 (11th Cir. 1989); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984). Plaintiff was fired during December of 2021, but did not file this lawsuit until June 12, 2024 — more than two years after the event giving rise to his claims.

The statute of limitations was *not* tolled by plaintiff's filing of a charge of discrimination with the EEOC. *See Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 461 (timely filing of employment discrimination charge with EEOC did not toll running of limitations period applicable to claim based upon the same facts).

___

[26] Ala. Code § 6-2-38(*l*) (1975) (1993 Replacement Volume) provides that: "All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years."

Accordingly, his § 1983 claims are time-barred.

For all of the foregoing reasons, plaintiff's § 1983 claims are due to be dismissed.

**C.    "Count V — Violation of Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb et seq. — Religious Discrimination — Duty Disqualification"**

The Religious Freedom Restoration Act of 1993, codified at 42 U.S.C. 2000bb *et seq*, contains the following provisions:

**(a) In general**

Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b).

**(b) Exception**

Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person —

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

**(c) Judicial relief**

A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government.

> Standing to assert a claim or defense under this section shall be governed by the general rules of standing under article III of the Constitution.

42 U.S.C. § 2000bb-1.

The Eleventh Circuit has not addressed whether the Religious Freedom Restoration Act applies to suits between private parties, as opposed to suits against a governmental entity, but district courts within the Circuit have held that it does not. *See, e.g., Franklin v. Austal USA LLC*, No. 1:23-cv-00040-KD-C, 2024 WL 973973 at *7 (S.D. Ala. Feb. 26, 2024); *Ratliff v. Wycliff Associates*, No. 6:22-cv-1185-PGB-RMN at *7 (M.D. Fla. May 26, 2023). This court agrees with the those decisions. Accordingly, this claim also is due to be dismissed.

## D. Claims under Alabama Law

Plaintiff has asserted claims of negligence/wantonness and invasion of privacy under Alabama law. Those claims are time-barred because plaintiff filed this lawsuit beyond the two-year statute of limitations. *See* Ala. Code § 6-2-38(*l*) (1975). Plaintiff argues that the statute of limitations was tolled when he filed a charge of discrimination with the EEOC. That argument is without merit, as the Supreme Court held long ago. *See Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 461 (1975) (timely filing of employment discrimination charge with EEOC did not toll running of limitation period applicable to claim based upon the same facts).

20

Accordingly, plaintiff's state law claims also are due to be dismissed.

## IV.  CONCLUSION

For all of the foregoing reasons, defendant's motion to dismiss is due to be granted.  A separate order consistent with this memorandum opinion will be entered contemporaneously herewith.

**DONE** this 6th day of November, 2024.

_____
Senior United States District Judge

21